**Robert Lee HOUCHENS, Petitioner,**

v.

**J. D. COX et al., Respondents.**

**Civ. A. No. CA 79–0658–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

June 2, 1980.

Bradley S. Stetler, Graber, Stetler & Townsend, Alexandria, Va., for petitioner.

Robert E. Bradenham, II, Asst. Atty. Gen. of Va., Richmond, Va., for respondents.

## MEMORANDUM

MERHIGE, District Judge.

Petitioner, Robert Lee Houchens, here seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is presently an inmate of the Virginia Department of Corrections and is confined at the department's Powhatan facility. The petition asserts that petitioner's August 5, 1971 conviction in the Circuit Court of New Kent County, Virginia violated the speedy trial provisions of the Sixth and Fourteenth Amendments.

Respondent J. D. Cox is superintendent of the Pawhatan Correctional Center. Respondent Terrell Don Hutto is Director of the Virginia Department of Corrections. Respondent Marshall Coleman is the Attorney General of the Commonwealth of Virginia.

Respondents have answered the petition and the Court has entertained oral argument on the questions of law. The Court has reviewed the state court records, including the petitioner's testimony regarding the issues presented by this controversy. An evidentiary hearing was also conducted in this court primarily upon the Court's interest in petitioner's assertion of his rights and the prejudice, if any, which was caused by the delay in prosecution. The matter is thus ripe for disposition. For the reasons which follow the Court is of the opinion that petitioner is not entitled to the relief he seeks.

Subject matter jurisdiction is conferred upon the Court by 28 U.S.C. § 2241.

Prior to February 1, 1970 petitioner was incarcerated at Correctional Unit # 16 in New Kent County, Virginia. Petitioner escaped from custody on that date. Petitioner was arrested by federal law enforcement officers on February 2, 1970 in Baltimore, Maryland.

Virginia Penitentiary authorities caused a warrant to be issued charging petitioner with escape on February 6, 1970. Other state officials had warrants issued for robbery, burglary and abduction on or about the same date.

On June 17, 1970 petitioner was convicted of kidnapping in this court. The conviction stemmed from petitioner's February 1, 1970 escape and flight. Petitioner was sentenced to serve a period of confinement not to exceed twenty years.

Petitioner was initially confined at the federal facility in Petersburg, Virginia following his kidnapping conviction. State officials, including New Kent Commonwealth Attorney W. Kendall Lipscomb, Jr., were notified of petitioner's confinement at Petersburg by letter of June 17, 1970. The outstanding state warrants were held as detainers against petitioner.

By letter dated June 29, 1970 Lipscomb requested that federal officials make petitioner available for a preliminary hearing in state court on July 31, 1970. Lipscomb also indicated his intent to *nolle prosequi* the abduction charge in light of the kidnapping conviction.

E. M. Andrews, the Records Control Supervisor at the federal institution, advised Lipscomb that the state could obtain custody of petitioner by writ of habeas corpus ad prosequendum. This letter of June 30, 1970 had instructions attached for effecting the transfer of custody.

Lipscomb reiterated his intent to prosecute petitioner in a letter to Andrews of July 7, 1970. Lipscomb also requested that he be advised of any plans to transfer petitioner from Petersburg.

Joseph Weaver, Advisory Assistant to the Warden at Petersburg, wrote Lipscomb on July 22, 1970 advising that petitioner had been transferred to the United States Penitentiary in Lewisburg, Pennsylvania. There is no dispute that this letter was the first notice that petitioner had been transferred from Petersburg.

Petitioner testified at the state trial that he learned of the state detainers during his initial confinement at Petersburg. The record further discloses that petitioner asked officials at Petersburg and Lewisburg to communicate with the state regarding its plans to prosecute.

The Lewisburg acting warden, W. H. Rauch, wrote Lipscomb on December 10, 1970. Rauch then reported that petitioner was not eligible for certain programs on account of the outstanding detainers. The letter is ambiguous, however, as to whether it was written upon Rauch's initiative or at petitioner's request.

Petitioner sought to enroll in the Adult Basic Education and Masonry programs at Lewisburg, and was informed that he was not eligible for these programs due to the outstanding detainers. Petitioner was enrolled in the Adult Basic Education and Tailoring programs upon his return to Lewisburg following the state prosecution.

On January 5, 1971 Lipscomb wrote to Rauch, reiterating his intent to prosecute petitioner. Lipscomb conditioned prosecution, however, upon federal officials making petitioner available at a location closer to New Kent County.

Petitioner was transferred from Lewisburg to Petersburg in February, 1971. Lipscomb was advised of the transfer by letter from Andrews dated February 10, 1971. Andrews again advised of certain conditions required in the transfer of custody.

Federal officials again solicited a response from the prosecution in an April 28, 1971 letter. That letter also advised that petitioner was not properly classified for confinement at Petersburg and that he was thus held in segregation and not "available for the treatment program outlined for him at Lewisburg."

Petitioner was indicted on May 17, 1971 by the New Kent County grand jury. Petitioner was tried by that court on August 5, 1971. Petitioner entered a plea of not guilty to robbery, escape and burglary. Petitioner was convicted of robbery and escape but was acquitted of the burglary charge.

Lipscomb testified that the delay in obtaining and prosecuting petitioner after July, 1970 was, in large part, occasioned by his difficulty in understanding the procedures of the Interstate Agreement on Detainers. It is also clear, and Lipscomb so testified in this court, that he was familiar with the habeas corpus *ad prosequendum* procedure. Lipscomb also admitted, in both the state court and in this court, that cost was a motivating factor in part of the state's delay. The prosecution hoped to avoid the Marshal's fee and mileage expenses in the transfer of custody from Lewisburg.

Petitioner admitted that the delay did not prejudice his defense in his state court trial. Petitioner did not offer any evidence that the delay caused him anxiety or distress. The only evidence of prejudice to petitioner was the ineligibility for rehabilitation programs and the period of segregation at Petersburg.

The Sixth Amendment's speedy trial guarantee is applicable to the states through the due process clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The right to a speedy trial differs from many of our constitutional rights in that it is impossible to determine with precision the point in time when it has been abridged. *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). The Court's task is, accordingly, to consider those factors which were enunciated in *Barker, supra.*

█ The first factor to be considered is the length of the delay in prosecution. The speedy trial right first attaches when an individual becomes an "accused". *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Petitioner entered into that status on February 6, 1970 when the state warrants were issued. Petitioner was not indicted until approximately fifteen months later and was not tried until eighteen months after the right attached. The delay in prosecution was sufficiently long to consider the three remaining factors.

Merely establishing the length of the delay is, however, not very instructive. Any period of delay may be more or less significant when it is considered in the context of the particular circumstances. Thus, the Court must examine the reason for the delay.

It was not unreasonable for the state to postpone prosecution of the petitioner until the conclusion of the federal proceedings. Indeed, it worked to petitioner's advantage, for the Commonwealth elected not to prosecute the abduction charge in light of petitioner's conviction for kidnapping. The Court is of the view that the period from February 6, 1970 until June 30, 1970 should not be weighed against the Commonwealth.

The prosecution must be afforded a reasonable time within which to obtain custody of a defendant through habeas corpus procedures. A four month period has been deemed reasonable. *Delph v. Slayton*, 355 F.Supp. 888 (W.D.Va.1973). The Court is of the view that a four month period is appropriate. The state learned of the conclusion of the federal proceedings on or about June 30, 1970 and the four month period expired on October 30, 1970.

The six and one-half month period from October 30, 1970 until petitioner's indictment on May 17, 1971 may be attributed to the state's negligence. The prosecution ignored the repeated requests of federal officials that some action be taken. There is no evidence, however, that the state's delay was intended to gain an unfair advantage in its prosecution of petitioner. The reason for this lapse of time was neutral and should not be charged too heavily against the state.

The state court concluded that petitioner asserted his speedy trial right. Although petitioner did not personally demand a trial, he did ask federal prison officials to make his request to the state. This conclusion was confirmed by the evidentiary hearing held in this court.

The final factor to be considered is the prejudice suffered by petitioner as a result of the delay. "Prejudice" would, of course, include impairing a defendant's defense at trial. It might also encompass the anxiety occasioned by long-pending criminal charges. Finally, prejudice includes the ineligibility for participation in prison programs.

Petitioner, by his own admission, was not prejudiced in the preparation of his defense in state court.

The state court record does not reflect any assertion of prejudice on the basis of anxiety or emotional distress. Petitioner also failed to assert such a claim in his testimony before this court; except with regard to the rehabilitation programs. The Court is aware that even one presently incarcerated may be anxious to have pending charges resolved. That may not be presumed, however, for delay may work to the defendant's advantage as well as to the prosecution.

The only prejudice asserted by petitioner concerns the Adult Basic Education and

Masonry programs at Lewisburg and the brief period in segregation at Petersburg in 1971. Petitioner could not have enrolled in the Lewisburg programs until mid-July, 1970. Petitioner became eligible for those programs in August, 1971. The period of the state proceedings (May, 1971 to August, 1971) should not be considered in this regard. Petitioner was thus denied enrollment in those programs for ten months.

Upon consideration of each of the above factors, the Court concludes that petitioner did not suffer a constitutional deprivation. While the delay in prosecution was significant, the entire period was either reasonable delay or attributable to a neutral factor. The prejudice shown by petitioner, especially when viewed with the reason for the delay, does not rise to constitutional magnitude. The Court is thus of the opinion that the petition for a writ of habeas corpus must be denied.

An appropriate order shall issue.